MATTHEW J. OLSON - SBN 265908
olson.matt@dorsey.com
DORSEY & WHITNEY LLP
167 Hamilton Avenue, Suite 200
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 618-1913

Proposed Attorneys for Debtor in Possession,
RUBRYC THERAPEUTICS, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 22-30583-DM-11 |
| RUBRYC THERAPEUTICS, INC., | **STATUS CONFERENCE STATEMENT** |
| Debtor. | Status Conference:<br>Date: December 8, 2022<br>Time: 10:00 a.m.<br>Place: Via ZoomGov/Teleconference<br>Judge: Hon. Dennis Montali |

COMES NOW RubrYc Therapeutics, Inc., Debtor in Possession herein, which offers its Status Conference Statement and respectfully represents as follows:

I.     **FACTORS LEADING TO THE BANKRUPTCY FILING AND DEBTOR'S GOALS**

Inspired by recent advances in molecular library synthesis, massively parallel screening, and computing, RubrYc Therapeutics was founded in 2017 to forge a new path for information-driven discovery of therapeutic antibodies, and related therapies. Using the RubrYc Interface Discovery Engine, the Debtor decoded protein interactions through the integration of predictive analytics and biological measurements. This interface-targeted approach allowed the Debtor to accelerate pre-clinical therapeutic antibody discovery, while minimizing many of the risks of industry-standard early-stage R&D. While the Debtor's business showed promise, it was unable to reach commercial success without further injections of capital, which it was not able to raise.

In light of these circumstances, the Debtor's board pursued and consummated a prudent, prepetition sale of the Debtor's business, including the RubrYc Interface Discovery Engine, to a strategic partner, iBio Inc.—a publicly-traded developer of precision antibody immunotherapies. The Asset Purchase Agreement called for the Debtor to receive iBio stock worth $1 million (which is subject to a lock-up agreement restricting further sale or transfer by the Debtor until 2023) (the "Closing Payment") and up to a further $5 million in iBio stock or cash—at iBio's discretion—upon the purchased assets meeting certain performance thresholds during the five-year period following closing of the sale to iBio (the "Contingent Payment"). The Debtor thereafter attempted to wind up its business affairs.

As the Court may recall from prior motion practice, among the tasks RubrYc completed was finding new homes for various pieces of equipment that RubrYc leased from Excedr and working with Excedr to have the operating leases for that equipment assigned to the new lessees. The Antibody Analyzer (more specifically, a Carterra LSA Array SPR Instrument) was the only piece of equipment which RubrYc leased from Excedr for which it was not able to find a new lessee. RubrYc advised Excedr that it was going out of business, that it had terminated its employees, that it wished to terminate the lease, and that it wanted to make arraignments for Excedr to collect the Antibody Analyzer. In the days that followed, RubrYc reiterated its request that Excedr collect the Antibody Analyzer. Once Excedr attempted to obtain an *ex parte* writ of attachment on RubrYc's bank accounts in state court, RubrYc filed its voluntary Chapter 11 petition on October 24, 2022, commencing this bankruptcy case. Shortly thereafter, the Court approved a stipulation between the Debtor in Possession and Excedr to permit Excedr's recovery of the Antibody Analzyer. The Debtor thereafter discharged its duties under the stipulation and the order approving the stipulation.

During the pendency of this case, the Debtor expects to confirm a plan of liquidation preserving the relative priority of claims and permitting the distribution of its assets to creditors in a prompt and expeditious manner.

## II. PROPOSED SCHEDULE FOR PROPOSING AND CONFIRMING A PLAN

The Debtor in Possession anticipates filing its plan in advance of the status conference and will seek to confirm the plan as promptly thereafter as possible.

## III. OUTLINE OF THE PROPOSED PLAN

The Debtor in Possession anticipates that its Plan will provide that secured creditors will be paid from their collateral, that any undersecured portions of those claims be treated as a general unsecured claim, pay certain small claims under a convenience class, distribute the remaining assets (consisting of cash, the proceeds of the eventual sale of iBio stock, the proceeds of any avoidance actions, and the proceeds of Contingent Payment, if any) to holders of general unsecured claims on a *pari passu* basis, and cancel the outstanding equity interests in the Debtor. While the Debtor in Possession expects the Plan will be confirmed on a consensual basis, the Debtor in Possession is prepared to pursue confirmation of the Plan under the provisions of Section 1129(b).

## IV. ADEQUACY OF INSURANCE

The Debtor in Possession currently has prepaid insurance policies for general liability, casualty (related to its formerly leased equipment), and director's and officer's liability, all of which expire in May 2023. Because the Debtor in Possession's ongoing operations are minimal, the Debtor in Possession submits that such insurance is adequate.

## V. RETENTION OF PROFESSIONALS

The Debtor in Possession is preparing applications to employ its general bankruptcy counsel (Dorsey & Whitney LLP), is bookkeeper and outside CFO (Countsy LLC), and tax accountant (Bachecki, Crom & Co., LLP). The Debtor in Possession anticipates that these applications will be filed before the status conference. The Debtor in Possession also anticipates retaining conflicts counsel to address any conflicts of interests that may exist concerning its general bankruptcy counsel.

## VI. POST-PETITION OPERATIONS

As the Debtor was already pursuing an orderly windup of its affairs while it waited for the proceeds of the Contingent Payment, the Debtor in Possession's ongoing operations are minimal

and the Debtor in Possession does not anticipate any material postpetition revenues other than the proceeds from sales of iBio stock and proceeds from avoidance actions, if any. The Debtor expects to emerge from bankruptcy before the Contingent Payment comes due.

## VII. LITIGATION PENDING IN OTHER FORUMS

The Debtor in Possession is aware of only one pending litigation matter as of the Petition Date: a collection action commenced by Excedr. That action was served less than 48 hours before filing of the Voluntary Petition, and the Debtor's response to the complaint was not yet due. Excedr's collection action remains stayed under the provisions of Bankruptcy Code Section 362(a).

## VIII. MEETING OF CREDITORS AND U.S. TRUSTEE REQUESTS

The Debtor in Possession appeared with counsel at the Meeting of Creditors held on November 22, 2022, and anticipates appearing at the continued Meeting of Creditors on December 7, 2022. The Debtor in Possession has responded to various requests made by the U.S. Trustee, but a handful of items remain outstanding. Those outstanding items concern the status of the Debtor's prepetition bank accounts (see discussion at IX, infra), a copy of Debtor's prepetition business license, documentation concerning the termination of a retirement plan, and certain amendments to the Debtor's schedules concerning tax attributes. With the exception of the issues connected with the Debtor's bank accounts, the Debtor in Possession expects to resolve these remaining requests before the continued Meeting of Creditors.

## IX. MONTHLY OPERATING REPORTS AND DIP ACCOUNTS

The Debtor in Possession filed an operating report for the October 2022 period and will file a report for the November 2022 period on or before December 21, 2022. The Debtor in Possession has established a DIP Account at East West Bank and directed its prepetition banker, Silicon Valley Bank ("SVB"), to transfer funds to that DIP Account and to close the prepetition account. SVB has so far refused to follow the Debtor in Possession's instructions, has frozen the prepetition account, and insists that a court order is required before it may release any funds. The Debtor in Possession has rejected SVB's position, has insisted that the funds be transferred immediately, and requested a consultation to SVB's legal counsel on the matter. SVB is

apparently still in the process of retaining outside counsel to address the matter. If the Debtor in Possession is not able to informally resolve the issue by December 2, 2022, the Debtor in Possession anticipates brining a motion to compel turnover of the bank account under Section 542 and will request a hearing on the motion on shortened time.

## X. CASH COLLATERAL AND CREDIT

The Debtor in Possession is not aware of any creditor who asserts a security interest in its cash and therefore does not plan to seek authority to use cash collateral. The Debtor in Possession does not anticipate needing to seek post-petition financing. However, the Debtor in Possession's prepetition credit card was not immediately canceled and certain automatic payments were charged against the card postpetition. The Debtor in Possession is evaluating the charges and will bring appropriate proceedings to address the postpetition charges against the prepetition credit account. The prepetition credit card has now been canceled.

## XI. THE AUTOMATIC STAY

The Court has approved a stipulation between the Debtor in Possession and Excedr to modify the automatic stay to recover certain equipment that the Debtor had sought to return to Excedr prepetition. The automatic stay otherwise remains in place as to all creditors.

## XII. LEASES AND EXECUTORY CONTRACTS

The Debtor in Possession does not anticipate brining any motions to assume or reject and leases or executory contracts.

## XIII. UNIQUE ISSUES

The Debtor in Possession does not believe that this case presents any unique issues that complicate the administration of its estate.

## XIV. UNUSUAL DEVELOPMENTS OR EVENTS

Except as already discussed in this Status Conference Statement, the Debtor in Possession is not aware of any unusual developments or events that might materially affect the administration of its estate.

**WHEREFORE,** the Debtor in Possession requests that the Court continue status conference about 180 days, to a date convenient for the Court, to allow for consideration of the Debtor in Possession's proposed Plan.

Dated: December 1, 2022          DORSEY & WHITNEY LLP

By: */s/ Matthew J. Olson*
MATTHEW J. OLSON
Proposed Attorneys for Debtor in Possession,
RUBRYC THERAPEUTICS, INC.